# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 12, 2023

Lyle W. Cayce
Clerk

_____

No. 22-50242

_____

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

MARTIN RENTERIA,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:20-CR-355-1

_____

Before SMITH, SOUTHWICK, and HIGGINSON, *Circuit Judges*.

JERRY E. SMITH, *Circuit Judge*:

Martin Renteria was charged with and convicted of (1) producing child pornography, (2) committing that offense while being required to register as a sex offender, (3) possessing child pornography, and (4) sex trafficking of a child. All four charges involved his conduct with "Minor Victim-1" or "the Minor."

Renteria appeals his conviction for Count 4, sex trafficking of a child. He maintains that in light of *Bond v. United States*, 572 U.S. 844 (2014), 18 U.S.C. § 1591 should not be interpreted to reach his conduct, which he

No. 22-50242

terms a "purely local sex offense[]." We disagree.

I.

Wanting to earn money, the Minor approached Renteria, a neighbor, and asked him whether there were any odd jobs he could do. Over the course of several weeks, the Minor mowed Renteria's lawn, washed his car, and completed other chores. During that time, Renteria provided the Minor with several items, such as a bike and a hoverboard, and took him to eat at fast food restaurants. It was later discovered (via a cell phone recording and testimony from the Minor) that Renteria had molested the Minor four times during those weeks.

Renteria was arrested by the state authorities and charged with the state offenses of indecency with a child and aggravated sexual assault of a child. He was then charged with two federal charges and later with a superseding federal indictment.

Renteria moved to dismiss Count 4 of the superseding indictment because the grounds charged did not constitute federal sex trafficking. The district court denied his motion. At trial, testimony and evidence were offered to show that the gifts were given in exchange for the sexual acts as distinguished from the chores done. Renteria then moved for a judgment of acquittal, which was denied.

The jury found Renteria guilty, and he was sentenced to life imprisonment for Count 4. He now appeals.

II.

The parties disagree about the standard of review. Questions of statutory interpretation are reviewed *de novo* if properly objected to at the district court, but for plain error if the defendant raises the objection for the first time on appeal. *United States v. Knowlton*, 993 F.3d 354, 357 (5th Cir. 2021).

The parties dispute whether Renteria properly objected at the district court level. We need not resolve that dispute. Even under a *de novo* standard of review, we would affirm Renteria's conviction. Thus, we will assume without deciding that Renteria properly objected and adopt a *de novo* standard of review.

### III.
### A.

*Bond* is a "curious case." 572 U.S. at 860. There, a woman tried to poison her neighbor and was charged with "possessing and using a chemical weapon." *Id.* at 852. The government explicitly waived any reliance on interstate commerce, instead justifying its authority on the treaty power of the United States. *Id.* at 854–55. As in this case, Bond made a two-pronged argument: First, that extending the statute to her actions would be unconstitutional, and second, that Congress couldn't possibly have intended the statute to criminalize behavior such as hers. *Id.* at 853.

The Court stated that "[p]art of a fair reading of statutory text is recognizing that Congress legislates against the backdrop of certain unexpressed presumptions," one of which is the "relationship between the Federal Government and the States." *Id.* at 857 (internal quotation marks and citation omitted). Therefore, "'it is incumbent upon the federal courts to be certain of Congress's intent before finding that federal law overrides' the usual constitutional balance of federal and state powers." *Id.* at 858 (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991)).

The upshot is this: If reading an otherwise ambiguous term in one way would cause an "intrus[ion] on the police power of the States," *id.* at 860 (citing *United States v. Bass*, 404 U.S. 336, 349 (1971)), and "significantly change the federal-state balance," *id.* at 859 (alterations omitted) (quoting *Jones v. United States*, 529 U.S. 848, 858 (2000)), then we require a clear

No. 22-50242

indication that Congress meant to reach purely local crimes. But we must be cautious. "*Bond* does not give courts a free-floating power to create statutory exemptions anytime a judge thinks Congress would have exempted a certain activity had anyone asked." *Gonzalez v. CoreCivic, Inc.*, 986 F.3d 536, 539 (5th Cir. 2021).

## B.

The government makes two arguments that would prevent us from even reaching an analysis under *Bond*. First, it contends that *Bond* does not apply to statutes, like § 1591, that contain an interstate commerce element. Second, the government posits that this circuit's precedent forecloses re-interpreting § 1591 in light of *Bond*. We do not resolve these questions here because Renteria's conduct falls within the ambit of § 1591 even when viewed through the *Bond* framework.

## C.

Overturning Renteria's conviction under *Bond* requires him to show three things: (1) that allowing his conviction would "significantly change the federal-state balance," 572 U.S. at 859; (2) that Congress has not included a clear indication that they meant to reach "purely local crimes," *id.* at 860; and (3) that his is a purely local crime. Without expressing any view on (1) or (3), we determine that Renteria has failed to demonstrate (2). Congress included a clear indication that § 1591 is meant to reach "purely local crimes." *Id.* at 859–60.[1]

---

[1] To be clear: We today decide merely that this reach extends only to "purely local crimes" for which the government has established a connection to interstate commerce. It undoubtedly has done so here. Renteria used the Internet to show the Minor bikes, to search for a video game for him, and to show him pornography. Renteria used a cellphone made in Vietnam to search for bikes to show the Minor, to film the Minor, to time him performing sexual acts, and to coordinate with his parents. And Renteria bought the Minor

No. 22-50242

Our circuit has found an implied local-crime exception under *Bond* before. In *United States v. Perez*, 43 F.4th 437 (5th Cir. 2022), we concluded that Congress's prohibition on biological warfare "does include the same local-crime exception" as does the prohibition on chemical weapons in *Bond*. *Id.* at 441. The similarity between the statutes at issue in *Bond* and *Perez* is striking. Both "originate in the Geneva Protocol of 1925 and both are treaty-implementing statutes," *id.* (quoting *United States v. Levenderis*, 806 F.3d 390, 397 (6th Cir. 2015)), and both are about weapons that are similarly accessible, *cf. id.*

But unlike the statutes at issue in *Bond* and *Perez*, § 1591 uses the phrase "in or affecting . . . commerce ." 18 U.S.C. § 1591(a)(1). And "[t]he phrase 'affecting commerce' indicates Congress' intent to regulate to the outer limits of its authority under the Commerce Clause." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001).

But, in that respect, Renteria's case is more like the unpublished case *United States v. Looney*, 606 F. App'x 744, 747 (5th Cir. 2015) (per curiam). *Looney* interpreted 18 U.S.C. § 2251(a), which prohibits the production of child pornography "using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce." With respect to § 2251(a), and "[u]nlike . . . in *Bond*, there is every indication that Congress intended to exercise all its power to regulate child pornography, including punishing purely local conduct so long as the minimal jurisdictional hook is satisfied." *Id.* Section 1591 is similar. The inclusion of the phrase "in or affecting . . . commerce" evinces Congress's intent to punish even purely local crimes (at least insofar as the government can establish a connection between the crime and interstate commerce, as it did here). 18 U.S.C.

---

a bike that had been made outside of Texas.

§ 1591(a)(1).

Renteria points to two decisions that interpreted statutes that *did* include "in or affecting commerce language" and that *Bond* favorably discussed. *See* 572 U.S. at 859. The first is *United States v. Bass*, in which the Court interpreted "a statute that prohibited any convicted felon from 'receiv[ing], possess[ing], or transport[ing] in commerce or affecting commerce . . . any firearm.'" *Id.* (quoting *Bass*, 404 U.S. at 337).

But Renteria's reliance on *Bass* is misplaced. In that case, the government wanted the Court to interpret the statute to "bar[] felons from possessing all firearms" even when the government could not "demonstrate a connection to interstate commerce." *Bond*, 572 U.S. at 859. The Court rejected the government's proposed interpretation, refusing to read an interstate element out of the statute. *See id.*

Crucially, that is not what Renteria seeks. The government prosecuted Renteria for a crime that did have a connection to interstate commerce. In that respect, a "narrowed" reading of § 1591 *à la Bass* would still capture Renteria's conduct.

Moreover, Renteria makes a strange argument that *Bass* requires narrowing § 1591 to cases where "conduct is [] suited to federal criminal [jurisdiction] alone." That is, since Renteria's conduct "is punishable under Texas law, as is appropriate for matters of traditionally local concern," *Bass* counsels interpreting the statute not to capture his conduct. But Renteria's argument places an unreasonable emphasis on one word in *Bass*. The Court in *Bass* said that its narrowing of the statute in that case "preserve[d] as an element of all the offenses a requirement suited to federal criminal jurisdiction *alone*." 404 U.S. at 351 (emphasis added).

Renteria's interpretation badly misreads this statement. The most natural reading of the passage is an observation that a connection to interstate

commerce is suitable only as an element of *federal* criminal jurisdiction (i.e. that it is not a suitable element of *state* criminal jurisdiction.) This is not the same as requiring that whatever the federal government seeks to reach with its commerce power be unreachable by state power. And this court has rejected just that deduction. *See, e.g.*, *Looney*, 606 F. App'x at 746 (Looney was charged with state and federal crimes for child pornography related conduct where the federal statute relied on a commerce hook.).

Renteria also relies on *Jones v. United States*, in which the Court interpreted the federal arson statute to exclude private residences. *See* 529 U.S. at 859. The statute in *Jones* prohibited arson against "any building . . . *used in* . . . commerce or in any activity affecting . . . commerce." *Id.* at 853 (emphasis added) (quoting 18 U.S.C. § 844(i) (1994 ed., Supp. IV)). Rather than endorsing the government's argument that this included private owner-occupied residences, the Court required a demonstration that the building in question was "currently used in commerce or in an activity affecting commerce." *Id.* at 859. In doing so, the Court seemed to acknowledge that "'affecting . . . commerce' . . . when unqualified signal[s] Congress' intent to invoke its full authority under the Commerce Clause." *Id.* at 854 (citations omitted). It then distinguished the federal arson statute: "But § 844(i) contains the qualifying words 'used in' a commerce-affecting activity. The key word is 'used.'" *Id.* (citations omitted). That key word is absent from the relevant part of § 1591 and from the law in *Bass*, 404 U.S. at 337 n.1.[2] Plainly put, the Court's somewhat restrictive inquiry of what it means to be "used in commerce," *Jones*, 529 U.S. at 859, is inapposite here.

---

[2] It is present in the relevant part of § 2251, *cf. Looney*, 606 F. App'x at 745. That statute, however, does not require "use in commerce" but use of "materials . . . mailed, shipped or transported" in commerce. 18 U.S.C. § 2251(a). As the conclusion reached by our court in that case demonstrates, this is not the same inquiry as the one in *Jones*.

This court is not alone in adopting a broader interpretation of § 1591 despite *Bond*. The Ninth Circuit has rejected arguments like those that Renteria raises, concluding that the interstate commerce element of § 1591 and its legislative history demonstrated Congress's clear intent to reach sex trafficking at all levels. *See United States v. Walls*, 784 F.3d 543, 546–47 (9th Cir. 2015). Because Congress included a clear indication that § 1591 is meant to reach "purely local crimes," Renteria's argument under *Bond* fails.

AFFIRMED.